Paul E. Manasian (SBN 130855)
Gregory A. Rougeau (SBN 194437)
Coque K. Dion (SBN 267894)
MANASIAN & ROUGEAU LLP
400 Montgomery Street, Suite 1000
San Francisco, California 94104
Tel: (415) 291-8425
Fax: (415) 291-8426
Email: manasian@mrlawsf.com

Proposed Counsel for Debtor in Possession,
MAJESTIC, LLC

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br>MAJESTIC, LLC,<br><br>            Debtor.<br><br><br><br>Federal Tax ID: 20-3911723 | Case No. 10-30787<br><br>Chapter 11<br><br>**DECLARATION OF JOE F. PINSONNEAULT IN SUPPORT OF DEBTOR'S MOTION TO COMPEL RECEIVER TO TURN OVER PROPERTY OF THE ESTATE**<br><br>**Date: March 16, 2010**<br>**Time: 1:30 p.m.**<br>**Place: Courtroom 22** |

I, Joe F. Pinsonneault, hereby declare as follows:

1. I am the managing member of MAJESTIC, LLC (the "Debtor") which owns and operates Hotel Majestic (the "Hotel") located at 1500 Sutter Street, San Francisco, California (the "Property"). This Declaration is respectfully submitted in support of the Debtor's Motion to Compel Receiver to Turn Over Property of the Estate filed concurrently herewith, seeking the Receiver's compliance with U.S.C 11 § 543.

1

DECLARATION OF JOE F. PINSONNEAULT IN SUPPORT OF DEBTOR'S MOTION TO COMPEL RECEIVER TO TURN OVER PROPERTY OF THE ESTATE

2. I have personal knowledge of the facts set forth in this Declaration, except as to those matters stated on information and belief, and, as to those matters, I believe them to be true. If called as a witness herein, I would and could competently testify as to the matters set forth herein.

3. The Hotel is a 58-room, Edwardian-style boutique hotel, constructed in 1902 and converted from residential to hotel use in 1985. Café Majestic, a restaurant and lounge located on the Property, is also owned and operated by the Debtor.

4. On or about December 1, 2005, the Debtor obtained a one-year purchase money loan from a private lender in the amount of approximately $5,000,000.00.

5. On or about December 1, 2005, the Debtor obtained additional financing for the purchase of the Property from MKA Real Estate Opportunity Fund I, LLC ("MKA") in the amount of approximately $8,000,000.00 (the "MKA Loan").

6. The Debtor purchased the Property with the specific intention of converting the Hotel into a condominium timeshare or fractional-interest ownership program.

7. On or about December 5, 2006, the Debtor obtained long-term financing for the purchase and condominium conversion of the Property from Pacific Western Bank ("PWB") in the amount of $8,000,000.00 (the "PWB Loan"). The PWB Loan replaced the purchase money financing and provided funds for converting the Hotel into condominiums. At this time, the Debtor refinanced the MKA Loan, which subordinated to the PWB Loan. A true and correct copy of the PWB Loan agreement is attached hereto as Exhibit "A."

8. In 2009, various disputes arose between the Debtor and PWB. The Debtor continued to make all loan payments to PWB until July 15, 2009.

9. On or about September 21, 2009, in San Diego Superior Court, PWB filed a complaint against the Debtor and others, including myself as the Debtor's managing member and a guarantor of the PWB Loan, case number 37-2009-00098723-CU-OR-CTL.

10. On or about December 4, 2009, the Debtor filed cross-complaints against PWB in San Diego Superior Court and Los Angeles Superior Court.

11.     On or about January 4, 2010, PWB and the Debtor entered a Foreclosure Postponement Agreement. I verify that attached hereto as Exhibit "B" is a true and correct copy of the Foreclosure Postponement Agreement. One of the terms of the Agreement was that PWB may require the Debtor to enter a stipulation for the appointment of a receiver for the Property.

12.     On or about January 13, 2010, the San Diego Superior Court ordered, per PWB's application, Bellann Raile of Cordes & Company (the "Receiver") to be the receiver for the Property. The San Diego Superior Court's appointment of the Receiver was based on the stipulation set forth in the Foreclosure Postponement Agreement. The Court's appointment of the Receiver was not based on a finding that the Debtor had mismanaged the Property. Attached hereto as Exhibit "C" is a true and correct copy of the Order for Appointment of Receiver.

13.     On information and belief, the Receiver is located in San Diego County, California, from where she has been remotely managing the Property.

14.     The Debtor successfully operated the Hotel from January 2006 through July 2009. In August 2009, the Debtor hired Frank J. Bramante ("Bramante") to manage the Hotel's operations so as to increase the Hotel's revenue, which declined in 2009 as a result of the economic recession.

15.     On or about August 20, 2009, on the Debtor's behalf, Bramante hired Marin Management, Inc. ("MMI") to provide sales and marketing services for the Hotel. A true and correct copy of the Sales and Marketing Agreement is attached hereto as Exhibit "D." Bramante retained MMI specifically for the sales and marketing expertise of Marilyn Perry ("Perry"), who was at that time an employee of MMI. MMI represented to Bramante that Perry had a proven track record of hotel sales and marketing success with MMI, and demonstrated exceptional skill in the field. Perry was retained by the Debtor specifically to lead all of the Hotel's sales and marketing efforts.

16.     On information and belief, on or about October 15, 2009, Perry ceased all communication with Bramante and any employees of the Hotel as a result of her unannounced termination from MMI. For over a month after Perry's sudden termination, MMI did not provide any replacement staff to lead the Hotel's sales and marketing efforts. Perry's eventual replacement

3
DECLARATION OF JOE F. PINSONNEAULT IN SUPPORT OF DEBTOR'S MOTION TO COMPEL RECEIVER TO TURN OVER PROPERTY OF THE ESTATE

Case: 10-30787     Doc# 24     Filed: 03/12/10     Entered: 03/12/10 22:30:41     Page 3 of 6

refused to discuss the Hotel's sales and marketing efforts with Bramante or other employees of the Hotel. See Exhibit "E" attached hereto, a true and correct copy of Bramante's e-mail correspondence with Perry and MMI.

17. On information and belief, MMI subsequently terminated all of the Property's sales and marketing staff. MMI's lack of marketing and sales efforts for the Hotel immediately reduced the Hotel's occupancy and revenue.

18. On information and belief, after cutting all sales and marketing efforts, MMI proceeded to sell the Hotel's rooms online for as low as $39.00 per night, well below the Hotel's operating costs per room. This caused the Hotel's revenue to further decrease, and created negative cash-flow for the Hotel.

19. On or about December 15, 2009, the Debtor cancelled the Sales and Marketing Agreement with MMI for MMI's failure to provide the sales and marketing services as represented to Bramante. As a result, the Debtor began paying approximately $3,500.00 per month for third-party sales and marketing efforts.

20. On information and belief, on or about January 15, 2010, the Receiver rehired MMI to operate and manage the Hotel. MMI exclusively controlled the online sales of the Hotel's rooms. Despite Bramante's protests and without authorization from the Debtor, MMI continued to sell rooms for as low as $39.00 per night. Such low-priced rooms brought clientele to the Property that deterred regular Café Majestic customers and hotel guests, and diminished the "sophisticated and elegant" appearance and reputation of the Hotel, as represented on the Hotel's website.

21. On information and belief, as a result of MMI's operation of the Hotel, the Hotel bar has run out various types of alcohol. Several bottles of alcohol are missing from the bar and are unaccounted for.

22. On or about January 25, 2010, the Receiver removed approximately $45,000.00 from the Hotel's operating account. These funds were not provided by the Debtor, but were placed in the Hotel's operating account by my holding company, Pinsonneault Holdings, to pay vendors and

employees of the Property. The Receiver failed to use these funds for the benefit of the Hotel, and still has not returned or accounted for these funds.

23. On or about January 28, 2010, MMI filed a complaint for breach of contract against the Debtor for $180,000.00 in Marin County Superior Court, case number CV-1000469. This case is currently pending in Marin County Superior Court. A true and correct copy of the summons and complaint are attached hereto as Exhibit "F."

24. On or about February 18, 2010, my bookkeeping employee, who oversees multiple properties that I own, misunderstood the status of the funds in the Hotel's merchant account, and withdrew $51,500.00 without my knowledge or consent. Upon discovery of this unauthorized transfer, I immediately returned $10,000.00 to the Hotel's merchant account. The remaining $41,500.00 removed from the Hotel's operating account would be offset by the $45,000.00 belonging to Pinsonneault Holdings which was removed from the Hotel's operating account by the Receiver, as referenced in paragraph 21 above. During the week preceding the filing of the Debtor's Chapter 11 petition, counsel for the Debtor and myself, Kirk B. Freeman, was in negotiations with counsel for the Receiver regarding an agreement to offset the amounts which were placed into the Debtor's accounts by Pinsonneault Holdings against the amounts which were inadvertently removed by my employee.

25. At no time has MMI claimed that the Debtor mismanaged the property. Any complaints by MMI about the pre-foreclosure management of the Hotel were directed at Paul Amonte, who was later retained by MMI to continue in his role as manager of the Hotel.

26. The Receiver has consistently refused to provide the Debtor with any financial documents relating to the Property (i.e. revenue, balance sheets, accounts payable).

27. On information and belief, during January and February 2010, the Receiver consistently denied access to prospective purchasers of the Property. The Foreclosure Postponement Agreement referenced in paragraph 11 specifically required any receiver of the Property not to interfere with any efforts by the Debtor to sell the Property.

5
DECLARATION OF JOE F. PINSONNEAULT IN SUPPORT OF DEBTOR'S MOTION TO COMPEL RECEIVER TO TURN OVER PROPERTY OF THE ESTATE

Case: 10-30787   Doc# 24   Filed: 03/12/10   Entered: 03/12/10 22:30:41   Page 5 of 6

28. On or about February 19, 2010, the Receiver submitted to the San Diego Superior Court an Inventory Report on the Property which only summarily lists physical assets, documents, and $27,034.08 in various hotel bank accounts as of the January 23, 2010 takeover by the Receiver. A true and correct copy of the Receiver's Inventory Report is attached hereto as Exhibit "G."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. This Declaration was executed on March 12, 2010, in Coronado, California.

*/s/ Joe F. Pinsonneault*
Joe F. Pinsonneault

6
DECLARATION OF JOE F. PINSONNEAULT IN SUPPORT OF DEBTOR'S MOTION TO COMPEL RECEIVER TO TURN OVER PROPERTY OF THE ESTATE

Case: 10-30787   Doc# 24   Filed: 03/12/10   Entered: 03/12/10 22:30:41   Page 6 of 6